# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEON W. KONESKO,

       Petitioner,                              Case No. 06-15675

v.                                                Honorable John Corbett O'Meara

JAN E. TROMBLEY,

       Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Leon W. Konesko, a state inmate, presently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2241. Petitioner was found guilty of (1) assault with intent to rob while armed, MICH.COMP.LAWS § 750.89, (2) first-degree home invasion, MICH.COMP.LAWS § 750.110(a)(2), (3) larceny in a building, MICH.COMP.LAWS § 750.360, and (4) two counts of felony firearm, MICH.COMP.LAWS § 750.227b, in the Bay County, Michigan, Circuit Court. He was sentenced, as a habitual offender, second, to concurrent terms of twenty to fifty years imprisonment for the armed robbery conviction, ten to thirty years imprisonment for the home invasion conviction, and four to twelve years imprisonment for the larceny conviction. Those sentences are to be served consecutively to two (2) two-year prison terms for the felony-firearm convictions. In his pleadings, Petitioner raises three issues, alleging that he is incarcerated in violation of his constitutional rights. Respondent has filed an answer to the petition, asserting that the claims lack merit because the decision of the Michigan Court of Appeals did not result in

an objectively unreasonable application of clearly established Supreme Court law. The Court agrees. Therefore, the petition will be denied.

I.

The charges against Petitioner arise from the break-in at the home of Olee Brown. The prosecution's theory at trial was that during the early morning hours of July 16, 2003, Petitioner and Brian Gilbert broke and entered Olee Brown's house with the intent to commit larceny; that once inside, they assaulted Brown with a pistol and demanded money; and that a cell phone was taken from the house after Brown fled the scene. Petitioner's position was that the prosecution failed to prove that he intended to steal because Gilbert was attempting to recover money Brown owed to him (Gilbert), and that he (Petitioner) was not involved in the taking of the cell phone. Co-defendant Gilbert pleaded guilty and testified against Petitioner at trial.

Olee Brown was first to testify. He testified that he lived in a second-floor apartment in Bay City, Michigan. He said that around 1 a.m., on July 16, 2003, he was awakened by a loud knocking on his door. According to Brown's testimony, he asked who it was. The person knocking identified himself as Brian Gilbert and asked to be let in. Brown said that he knew Gilbert from when they had worked together at a restaurant. Brown testified that, because it sounded to him as if Gilbert had been drinking, he did not let him into his house. Rather, Brown told Gilbert to call him "tomorrow." Brown owed Gilbert money, which he had not paid, despite Gilbert's several requests. Brown said he had not spoken to Gilbert for about two months.

It was Brown's testimony that he then went back to sleep; about twenty minutes later, he heard his door being kicked in. He said he got out of bed and went to the stair landing, where he saw Gilbert running up the stairs, followed by a man, whom he identified as Petitioner, with a

gun. Brown testified he tried to go back into his bedroom to call 911, but Petitioner put the gun to his head and told him to put the phone down. Brown said Gilbert demanded money, jewelry, or drugs. He said that while Gilbert was making those demands, Petitioner was using racial epithets and threatening to kill him. It was Brown's testimony that when Petitioner told him to get on his knees, he pulled out his "junk drawer," which was filled with rings, old watches, and stuff he had collected over the years. Brown testified that while he was rooting around in the drawer, Petitioner hit him in the head with the gun. Brown said he was injured by the blow and that the wound was sutured and left a one-inch scar.

According to Brown's testimony, when he told Gilbert that he did not have anything, Gilbert told Petitioner to shoot him. Brown said Petitioner grabbed a pillow, and that he (Brown) then struggled with Petitioner, until he threw himself over the banister and down the stairs. Brown testified that he then ran outside, and eventually flagged down a police officer. When he got back to his house, he noticed that his cell phone was missing.

Bay City Police Officer Chad Warren testified next. According to his testimony, he came into contact with Olee Brown on the night of July 16, 2003, around 1:36 a.m. He said that he saw that he was wounded and got him some medical attention. Officer Warren testified that he then went to Brown's residence, where he saw that the door to Brown's apartment appeared to have been forced open, that there was a footprint on the door, and that the apartment appeared to have been ransacked.

Gilbert pleaded guilty and testified against Petitioner; however, Gilbert's plea agreement did not require him to testify against Petitioner. According to Gilbert's testimony, he said that he had known Brown for at least three or four years, and that he had known Petitioner for just a few

weeks. It was Gilbert's testimony that, before going to Brown's house, during the early morning hours of July 16, 2003, he and Petitioner had driven to a house in Saginaw, Michigan, where Petitioner had obtained a handgun. It was Gilbert's testimony that he and Petitioner had driven to Saginaw, Michigan, before he told Petitioner that Brown owed him money. He testified that the gun that Petitioner got, when in Saginaw, did not contain any bullets.

Gilbert testified that after they returned to Bay City, Petitioner drove to Brown's house, at his request. It was Gilbert's testimony that he had not told Petitioner why he wanted to go to Brown's house, which was to ask for the two hundred dollars Brown owed him. Gilbert testified that they had arrived at the Brown house between 12:00 and 1:00 a.m. He testified that he went and knocked on the door, but that Brown told him to go away and come back "tomorrow," or he would call the police.

According to Gilbert's testimony, as they drove away, he told Petitioner that Brown had not let him in; he said they talked about what had happened, and then, about ten to fifteen minutes later, they drove back to Brown's house. When they returned, Gilbert said he approached Brown's house and kicked the door in. He testified that Petitioner entered the house and went upstairs; he said he followed Petitioner up the stairs.

Gilbert testified that they both then entered the bedroom, and he asked Brown to give him either the money that he was owed or something else in compensation for it. Gilbert gave Brown a necklace that was pawned to get money for rock cocaine, which was used by Gilbert and Brown. However, Brown never paid Gilbert for the money that he got for the necklace.

According to Gilbert's testimony, Petitioner pointed the gun at Brown, while Brown looked for something to give them. It was Gilbert's testimony that when Brown did not find

4

anything, Petitioner hit him (Brown) in the head with the gun. Gilbert said that Petitioner grabbed a pillow to use to intimidate Brown, and that he (Gilbert) then told Petitioner to shoot Brown. Gilbert testified that Brown struggled with Petitioner for the gun, ran out of the bedroom, and down the stairs.

According to Gilbert's testimony, after Brown escaped, he went through some drawers and found a cell phone, which he took with him, and then, subsequently, disposed. Gilbert, testified that, to the best of his knowledge, Petitioner did not take anything from Brown's house.

Gilbert testified that he was interviewed by the police the following day, and that he admitted his involvement in the incident to the police. It was his testimony that he had lied to the police about (not) kicking in the door (telling them that Petitioner had kicked it in), about not knowing about the gun, and about not taking the cell phone. He also said that he did not say anything to them about having gone to Saginaw.

Gilbert testified that he had consumed about six beers that evening and was intoxicated. Gilbert testified that, even two weeks prior to the trial, when he was interviewed by the police, he was still trying to minimize his involvement in the incident, and that he had lied about various details.

Bay City Police Detective Wayne Stockmeyer testified to interviewing Gilbert and arresting Petitioner. Detective Stockmeyer testified regarding the tape recordings of phone calls Petitioner made while incarcerated in the county jail. He also testified that he had Gilbert's footwear compared to the footwear impression on Brown's door; a report of the comparison indicated that Gilbert's footwear could have made the impression.

5

Petitioner testified. He said that he met Gilbert in a bar about five weeks prior to the incident in question. It was his testimony that, on July 15, 2003, at about 11:00 p.m., he went to a bar to see some friends and shoot pool. He said that he saw Gilbert and his girlfriend there. Petitioner testified that Gilbert was intoxicated. He said that he had a conversation with Gilbert, and that they then left the bar together. According to Petitioner's testimony, because he was having problems with his girlfriend, he then drove to Saginaw to see a friend. While he was there, he said that he borrowed a pistol; he said the gun was not loaded.

Petitioner testified that as he and Gilbert were then driving back to Bay City, Gilbert asked him to drive him (Gilbert) to a friend's house. It was Petitioner's testimony that, when they got there, Gilbert went to the door, knocked on it with his foot, and told the person to open the door. Petitioner said that the person inside told Gilbert he did not have his money and that if he did not leave, he would call the police. Petitioner said that they then left. However, it was Petitioner's testimony that Gilbert then insisted that he take him back to the house, which he did.

According to Petitioner's testimony, when they got to Brown's house the second time, Gilbert went into the house first, and Petitioner followed, a couple of minutes later. He said Gilbert went into Brown's bedroom and demanded that Brown pay him the money owed him. Petitioner said they fought and pushed each other, while he was standing in the doorway. He said Brown pushed past Gilbert and charged him; he said he then hit Brown in the head with the gun, and Brown fell back on the bed. Petitioner said he then left, and that Brown left after he did, leaving Gilbert alone in the apartment. Petitioner said he did not see the cell phone until Gilbert had gotten back into the car and they were driving away. He said he did not go to

6

Brown's house with the intention of robbing him, and that, he did not take anything from the house.

The jury convicted Petitioner of the above-stated charges.

Subsequently, Petitioner, through appointed counsel, filed a first right of appeal with the Michigan Court of Appeals, raising the following claims:

> I. [Petitioner's] convictions for assault with intent to rob while armed and larceny in a building must be vacated because the evidence presented at trial was insufficient, as a matter of law, to support a conviction for either offense.
>
> II. [Petitioner] was denied his federal and state constitutional right to due process of law because the trial judge failed to instruct the jury on the defense of claim of right even though Brian Gilbert and [Petitioner] testified, in essence, that the demand for money on which the assault with intent to rob and larceny in a building charges were based arose out of a claim of right.
>
> III. Defense counsel's failure to request an instruction on the defense of claim of right or to object to the trial judge's failure to instruct on that defense, and counsel's failure to object to inappropriate or improper instructions regarding the charged offense of assault with intent to rob while armed denied [Petitioner] his federal and state constitutional right to the effective assistance of counsel.
>
> IV. Charging [Petitioner] with both assault with intent to rob while armed and larceny in a building violated the rule against breaking a single offense into multiple charges and denied him his Fifth and Fourteenth Amendment rights to due process of law, and convicting him of both offenses violated the prohibition against multiple punishments.
>
> V. The trial judge reversibly erred by instructing the jury on the offense of assault with intent to rob while armed and/or without also instructing the jury on armed robbery and/or that they could not find him guilty of assault with intent to rob while armed if they determined that he was also guilty of larceny.

> VI. [Petitioner] is entitled to resentencing because the trial judge failed to properly recognize and exercise, and therefore abused, his discretion when he sentenced [Petitioner] to prison for 20-50 years on the assault with intent to rob while armed conviction and 10-30 years on the home invasion conviction because he based his exercise of sentencing discretion on inaccurate information-improperly scored sentencing guidelines.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished, *per curiam* opinion. *People v. Konesko*, No. 254865, 2005 WL 1632532 (Mich.Ct.App. July 12, 2005). Subsequently, Petitioner filed a delayed application for leave to appeal that decision in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. On February 27, 2006, the Michigan Supreme Court denied Petitioner's delayed application for leave to appeal. *People v. Konesko*, 474 Mich. 1069, 711 N.W.2d 312 (2006) (Kelly, J., would hold this case in abeyance for *People v. Drohan*, lv. gtd. 472 Mich. 881, 693 N.W.2d 823 (2005)).

Thereafter, Petitioner filed the pending petition for a writ of habeas corpus, presenting the following claims:

> I. Insufficient Evidence to Support Petitioner's convictions.
>
>> A. Prosecution failed to establish the intent element of assault with intent to rob while armed.
>>
>> B. Insufficient evidence to establish intent to commit larceny.
>
> II. Petitioner was denied due process by the trial judge's failure to properly instruct the jury.
>
> III. Defense counsel was ineffective for failure to request jury instructions on the defense of claim of right.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state-court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, 529 U.S. at 407-08. Relief is also available under this clause if the state-court decision either unreasonably extends

9

or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state-court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state-court decision is "contrary to" or an "unreasonable application of" clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

With that standard in mind, the court proceeds to the merits of the petition for a writ of habeas corpus.

A.

Petitioner first contends that there was insufficient evidence adduced at trial to convict him of assault with intent to rob while armed and larceny in a building.

A claim that the evidence was insufficient to convict a petitioner is cognizable under 28 U.S.C. § 2254. Because the Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," *Fiore v. White*, 531 U.S. 225, 228-29 (2001), "a state-law question regarding the elements of the crime predicates the enforcement of [Petitioner's] federal constitutional right." *Richey v. Mitchell*, 395 F.3d 660, 672 (6th Cir. 2005).

Sufficient evidence supports a conviction if, after viewing the evidence (and all inferences to be drawn therefrom) in a light most favorable to the prosecution, the court can

conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1148 (2004). This standard of review obviously does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie, supra* at 727. This due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime and not to the state's burden to prove the absence of an affirmative defense; however, if the state has made the absence of a defense an element of the crime, sufficiency of evidence on the issue will then be relevant. *Allen v. Redman*, 858 F.2d 1194, 1196-98 (6th Cir. 1988). Circumstantial evidence may support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Clifford v. Chandler*, 333 F.3d 724, 728 (6th Cir. 2003), *cert. denied*, 124 S.Ct. 1601 (2004); *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The Michigan Court of Appeals, the last court to issue a reasoned decision in this case found:

> A claim of insufficient evidence is reviewed de novo, *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002), in a light most favorable to the prosecutor to determine whether a rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt, *People v Johnson*, 460 Mich 720, 723; 507 NW2d 73 (1999). "'The elements of assault with intent to rob while armed are: (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed. Because this is a specific-intent crime, there must be evidence that the defendant intended to rob or steal.'" *People v*

11

*Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003), quoting *People v Cotton*, 191 Mich App 377, 391; 478 NW2d 681 (1991). Circumstantial evidence and the reasonable inferences that arise from the evidence can satisfactorily prove the elements of a crime, *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), including the intent to rob or steal, *People v Harris*, 110 Mich App 636, 641; 313 NW2d 354 (1981). Because state of mind is hard to prove, minimal circumstantial evidence is required. *People v Fennell*, 260 Mich App 261, 270-271; 677 NW2d 66 (2004).

After considering the record evidence in the appropriate light, we conclude that it was more than sufficient to establish the elements of assault with intent to rob while armed. Defendant admits he was armed with a gun, and he assaulted the victim by hitting him in the head with it. The testimony was also sufficient to establish that defendant intended to rob or steal from the victim. Defendant pointed a gun at the victim's head while his companion demanded that the victim turn over money, jewelry, or drugs. Defendant continued to hold a gun to the victim's head while the victim searched through drawers looking for something of value. A reasonable juror could infer from these facts and circumstances that defendant had the requisite intent to rob or steal. *Harris, supra* at 641. Defendant argues that because he was not interested in robbing the victim, and his companion was merely taking back property which rightfully belonged to him, defendant lacked the requisite intent. Defendant's version merely presents a question of credibility that the jury appears to have resolved in favor of the prosecution, and which we will not revisit on appeal. *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

The elements of larceny in a building are a taking, either actual or constructive, of goods or property of another within a building, and asportation of the goods with felonious intent and against the owner's will. *People v Sykes*, 229 Mich App 254, 278; 582 NW2d 197 (1998). A conviction of aiding and abetting a crime requires proof that (1) the charged offense was committed by someone; (2) the defendant acted or encouraged in a manner that assisted in its commission; and (3) the defendant either intended that the offense be committed or knew that the principal intended to commit the offense when the defendant helped or encouraged it. *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004).

Again viewing the evidence in the proper light, we

> conclude that it was sufficient to establish that defendant aided and
> abetted in the larceny. First, there is sufficient evidence to find
> that defendant's companion committed a larceny in a building, i.e.,
> the taking and asportation of the victim's cellular telephone
> without the victim's permission after the victim had fled the
> apartment. Second, a reasonable juror could infer from the
> circumstances that defendant encouraged and assisted in the
> commission of this offense. Given that the evidence tends to
> establish a concert of action by defendant and his companion
> before the victim fled, the jury could reasonably infer that they two
> continued to work together after the victim left.

*People v. Konesko*, No. 254865, 2005 WL 1632532, slip op. at 1-2.

Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 518 U.S. 1027 (1996).

Petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent. The Michigan Court of Appeals held that, based on the foregoing facts, a rational trier of fact could have found Petitioner guilty of both assault with intent to rob while armed and larceny in a building beyond a reasonable doubt. That determination was itself correct and a reasonable application of *Jackson*, 443 U.S. at 324. Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

B.

Petitioner next contends that he was denied his constitutional right to due process when the trial judge failed to instruct the jury on the claim of rights defense. The Michigan Court of Appeals rendered the last reasoned opinion discussing the jury instructions and recognized that Petitioner failed to request this instruction, and, therefore, reviewed Petitioner's claim for plain error.

As noted, habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85 (1977). The failure to make contemporaneous objection is a recognized and firmly-established independent and adequate state-law ground for refusing to review trial errors. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). In this case, the Michigan Court of Appeals relied upon the default, nevertheless reviewed the claim for plain error. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753. Petitioner alleges that trial counsel was ineffective as cause to excuse his default. Petitioner, however, cannot establish that counsel erred or that he was prejudiced because his jury instruction claim lacks merit.

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). If an instruction is

ambiguous and not necessarily erroneous, it runs afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *Id.* at 72. State law instructional errors rarely form the basis for federal habeas corpus relief. *Id.* at 71-72.

In this case, the Michigan Court of Appeals stated in pertinent part:

> Defendant's argument is premised on his companion's purported claim of right to money generated by the pawning of the companion's necklace. The money was apparently used to purchase drugs for use by both defendant's companion and the victim. While defendant's companion claimed at trial that the victim owed him money, he did not testify that there was an actual agreement for repayment. Further, there is no evidence that the alleged debt had a fixed value or that defendant's companion only demanded money in payment of a liquidated debt. Instead, the evidence shows that defendant's companion had demanded money, jewelry, drugs, or anything of value. While money is fungible, jewelry and drugs are not. 3 LaFave, Substantive Criminal Law (2d ed, 2003), § 19.5(d), pp 93-94. Because the value of the alleged debt was not established, there is no way to assess the equivalency of the debt and the property obtained–a cellular telephone–under a claim of right. *Id.*
>
> Additionally, the evidence did not support the assertion that defendant's companion honestly and reasonably believed that he was entitled to possession of the victim's personal property. The circumstances in which the alleged attempt to satisfy the debt occurred–late at night, during a home invasion, and at gun point–do not support a finding that defendant's companion had a legitimate claim of right of the property. Accordingly, the court did not commit plain error when it failed to sua sponte give an instruction regarding claim of right.

*People v. Konesko*, No. 254865, 2005 WL 1632532, slip op. at 3.

This Court agrees with the decision of the Michigan Court of Appeals. Petitioner has

failed to establish that the instructions as given were erroneous or ambiguous. For habeas relief to be warranted, a petitioner must show more than the jury instructions were undesirable, erroneous, or even universally condemned. Rather, the petitioner must show that the instructions, taken as a whole, were so infirm that they rendered the entire trial fundamentally unfair. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Petitioner has made no such showing in this case. As explained by the Michigan Court of Appeals, a claim of right defense is not available to a defendant who is engaged in illegal activities. On that basis, the Court finds that Petitioner is not entitled to habeas relief on this claim.

The Michigan Court of Appeals relied upon a state procedural bar in rejecting Petitioner's instructional error claim–Petitioner's failure to request the claim of right instruction or to object to the jury instructions during trial. Petitioner alleges in his final claim that trial counsel was ineffective for failing to request an instruction on the defense of claim of right or to object to the instructions as given. The Court will now proceed to address the merits of that claim.

C.

Finally, Petitioner alleges that trial counsel was ineffective for failing to request an instruction on the defense of claim of right or to object to the instructions as given.

To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

With respect to the performance prong of the *Strickland* test, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

The Michigan Court of Appeals denied Petitioner relief on his ineffective assistance of counsel claim, finding:

> Next, defendant argues defense counsel was ineffective for failing to request a claim of right instruction, as well as for failing to object to the alleged overcharging and instructional errors. In light of our conclusion that a claim of right defense was unwarranted under the circumstances of this case, defense counsel's failure to request such an instruction does not support a claim of ineffective assistance. (Citation omitted.) Counsel cannot be faulted for failing to make a meritless request for an instruction not warranted under the circumstances. See *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). Similarly, because there is no merit to defendant's double jeopardy argument, defense counsel's failure to object to the charges or the jury

instructions on this ground was not error. *Id.*

*People v. Konesko*, No. 254865, 2005 WL 1632532, slip op. at 4.

The trial court adequately informed the jury of the requisite intent elements of the crimes charged. When giving the instructions as to the intent to commit armed robbery, the trial court stated:

> Third, that at the time of the assault, the defendant intended to commit robbery. Robbery occurs when a person assaults someone else and takes money or property from him or in his presence intending to take it from the person permanently. It is not necessary that the crime be completed or that the defendant have actually taken any money or property. However, there must be proof beyond a reasonable doubt that at the time of the assault, the defendant intended to commit robbery.

(Trial Tr. Vol. V, p. 52.)

The trial court instructed that the jury needed to find the intent to rob and defense counsel argued, during trial and in closing argument, that the intent to rob was not present. As the Supreme Court has stated, "it is the rare case in which an improper instruction will justify reversal of a criminal conviction, when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. at 154. Thus, even assuming that Petitioner can established cause for the default, which the Court finds that he did not, he cannot demonstrate actual prejudice. Based on the facts in this case, there is not doubt that Petitioner engaged himself in illegal activities. Therefore, the Court agrees with the decision of the Michigan Court of Appeals and finds that Petitioner is not entitled to habeas relief on this claim.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED**.

                                                    s/John Corbett O'Meara
                                                    United States District Judge

Date: February 6, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 6, 2008, by electronic and/or ordinary mail.

                                                    s/William Barkholz
                                                    Case Manager